UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:20-CV-00051-JHM-HBB

GELENA HACKNEY										PLAINTIFF

VS.

ANDREW SAUL, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION							DEFENDANT

**FINDINGS OF FACT, CONCLUSIONS OF LAW
AND RECOMMENDATION**

BACKGROUND

Before the Court is the complaint (DN 1) of Gelena Hackney ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).  Plaintiff filed a motion for summary judgment (DN 17), and Defendant filed a Fact and Law Summary in response (DN 20).  For the reasons that follow, the undersigned concludes that the Commissioner's findings are supported by substantial evidence, and it is recommended that judgment be granted for the Commissioner.

Pursuant to General Order No. 2018-02, this matter has been referred to the undersigned United States Magistrate Judge to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law, and Recommendations.  By Order entered October 2, 2020 (DN 16), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.  No such request was filed.

## FINDINGS OF FACT

On November 3, 2016, Plaintiff protectively filed an application for Disability Insurance Benefits (Tr. 12, 174-75, 176-80). Plaintiff alleged that she became disabled on January 30, 2016 as a result of breaking both legs, breaking both arms, bad ankles, Crohn's disease, and depression (Tr. 12, 176, 193). The state agency denied Plaintiff's application at the initial level on January 26, 2017 and at the reconsideration level on April 11, 2017 (Tr. 12, 82-92, 95-107).[1] On April 28, 2017, Plaintiff filed a written request for hearing (Tr. 12, 122-23). On August 17, 2018, Administrative Law Judge Maribeth McMahon ("ALJ") conducted a hearing in Paducah, Kentucky (Tr. 12, 31). Plaintiff and her counsel, Eric Yocum, appeared for the hearing (Id.). Jessica Kinard, an impartial vocational expert, testified by telephone during the hearing (Id.).[2]

In a decision dated April 8, 2019, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 12-22). The ALJ determined that Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2017 (Tr. 14). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset date of January 30, 2016 through her date last insured of March 31, 2017 (Id.). At the second step, the ALJ determined that Plaintiff has the following severe impairments: multiple fractures to the right upper extremity and bilateral lower extremities, status-post motor vehicle accident in January 2016 (Id.). The ALJ also determined

---

1 The administrative decision indicates Plaintiff's application was denied at the reconsideration level on April 26, 2017 (Tr. 12). However, the Disability Determination Explanation indicates April 11, 2017 (Tr. 107). The undersigned will utilize the date set forth on the Disability Determination Explanation.

2 Although the administrative decision indicates Theresa Wolford testified in person (Tr. 12), the undersigned has relied on the hearing transcript which indicates Jessica Kinard testified by telephone (Tr. 31).

while Plaintiff's Crohn's disease and depression are medically determinable impairments, the evidence failed to show these impairments caused more than minimal work-related functioning limitations (Tr. 15-16). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 16).

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work with the following limitations: occasional overhead reaching with non-dominant left upper extremity; in an eight-hour workday, the claimant can sit, stand, and walk up to six hours with normal breaks; she can never climb ladders, ropes, or scaffolds; she can frequently kneel and climb ramps/stairs but only occasionally stoop, crouch, and crawl; she must avoid concentrated exposure to vibrating, unprotected heights, and dangerous machinery; and she would need the ability to change positions without leaving the workstation or being off-task for up to thirty minutes at a time (Tr. 17). The ALJ relied on testimony from the vocational expert to find that Plaintiff is unable to perform any of her past relevant work (Tr. 20).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience, as well as testimony from the vocational expert (Tr. 20-21). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, at any time from January 30, 2016, the alleged onset date, through March 31, 2017, the date last insured (Tr. 21). Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 171-73). The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 *et seq.* (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC to return to his or her past relevant work?

5

> 5) Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

## Finding No. 4

1. Arguments of the Parties

Plaintiff alleges the ALJ failed to adequately address whether she meets or medically equals Listing 1.06 despite having introduced sufficient evidence indicating Plaintiff meets the listing (DN 17-1 PageID # 4751; DN 17-2 PageID # 4756-58, citing Reynolds v. Comm'r of Soc. Sec., 424 F. App'x 411, 415-16 (6th Cir. 2011)). More specifically, Plaintiff challenges the ALJ's finding that the medical evidence failed to demonstrate extreme walking difficulties and that the impairment significantly interfered with her daily activities (DN 17-2 PageID # 4756-58, citing Tr. 16-17). In support of her position, Plaintiff cites her own testimony indicating she must prop her feet up, wear a compression stocking due to swelling, and has difficulty ambulating due to pain (DN 17-2 PageID # 4757 citing Tr. 48-49). Additionally, Plaintiff cites an April 25, 2016 treatment note prepared by her orthopedic surgeon Dr. Jacob O'Neil (Id. citing Tr. 384). It discusses Plaintiff's follow-up examination about 11 weeks after Dr. O'Neil performed the interlocked IM nailing of her left tibia and right humerus fractures; the plate and screw fixation of her right talar neck fracture; and the open reduction internal fixation ("ORIF") of her left humeral shaft fracture with plate and screws (Id. citing Tr. 384). Specifically, Dr. O'Neil indicates while x-rays taken that day show favorable healing as to most of the fractures, the two x-ray views of Plaintiff's left tibia/fibula:

> [s]how the interlocked IM nail to be intact across the segmental tibial shaft fracture.   There is also a segmental fracture of the fibula. <u>There is no evident callus formation at the distal tibial fracture site.</u>

(Id. quoting Tr. 384) (emphasis in original).   Plaintiff explains that "[c]allus formation is required for healing of fractures, its absence indicates healing has not begun" (Id. at PageID # 4757).[3] Plaintiff asserts that Dr. O'Neil confirmed this view in his diagnosis of "[c]omminuted left tibial and fibular shaft fractures status post IM nail fixation with evidence of <u>delayed healing at the distal tibial fracture site</u>" (Id. citing Tr. 385).   Plaintiff also cites a May 24, 2016 treatment note prepared by Dr. O'Neil (Id. citing Tr. 382).   It reiterates Dr. O'Neil's diagnosis of "[c]omminuted left tibial and fibular shaft fractures status post IM nail fixation with evidence of <u>delayed healing at the distal tibial fracture site</u>" (Id. citing Tr. 382) (emphasis added).   Plaintiff asserts that "the ALJ never even mentioned the delayed healing factor" (Id.).   Plaintiff contends a remand is appropriate because she raised sufficient evidence showing she meets Listing 1.06, yet the ALJ gave no more than an insufficient cursory analysis that omitted consideration of the evidence mentioned above (Id. at PageID # 4757-58).

Regarding Plaintiff's claim that the ALJ's step three finding was "perfunctory," Defendant contends the argument is contrary to Sixth Circuit case law indicating an Administrative Law Judge's analysis is adequate if he makes "sufficient factual findings *elsewhere in his decision* to support his conclusion at step three" (DN 20 PageID # 4776, citing <u>Forrest v. Comm'r of Soc. Sec.</u>, 591 F. App'x 359, 366 (6th Cir. 2014) (emphasis added in DN 20)).   Further, Defendant suggests that Plaintiff's reliance on <u>Reynolds</u> is misplaced because that Administrative Law Judge

---

3 William Shiel, *Medical Definition of Callus*, MedicineNet (Dec. 4, 2018), https://www.medicinenet.com/psoriasis_symptoms_treatment_pictures_slideshow/article.htm.

7

identified a specific listing but failed to discuss the claimant's impairments under that listing (Id. at PageID # 4776-77 citing Reynolds, 424 F. App'x at 415). By contrast, here, the ALJ identified Listings 1.02, 1.06, and 1.07 as being applicable to Plaintiff and then analyzed her impairments under those listings and ultimately concluded they did not meet or medically equal those listed impairments (Id. at PageID # 4777). Defendant asserts the ALJ's step three finding was consistent with the medical evidence and Plaintiff's own level of daily activity, which showed as a result of surgical intervention and medical treatment following the January 2016 motor vehicle accident, her symptoms improved to the point where she had some residual symptoms, including slight antalgic gait and ongoing extremity pain, but she did not demonstrate an inability to ambulate effectively (Id. at PageID # 4775-81, citing Tr. 18, 379, 1474). In support of this assertion, Defendant points out that in June and July of 2016, two treating surgeons, Drs. O'Neil and Matthew T. Langenberg, noted Plaintiff was ambulating on her own (Id. citing Tr. 18, Tr. 379, 1474). Additionally, the ALJ discussed Plaintiff's daily activities which showed an ability to ambulate effectively (Id. citing Tr. 16, 17, 257-59, 381, 379) Defendant argues because Plaintiff did not show her impairments met or medically equaled a listing, the ALJ appropriately proceeded to the next step in the sequential evaluation process (Id.).

    2.    Discussion

At the third step, a claimant will be found disabled if her impairment meets or medically equals one of the listings in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii); Turner v. Comm'r of Soc. Sec., 381 F. App'x 488, 491 (6th Cir. 2010). The Listing of Impairments, set forth in Appendix 1 to Subpart P of the regulations, describes impairments the Social Security

Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c)(3). A claimant must satisfy all the criteria to "meet" the listing and be deemed disabled. *See* 20 C.F.R. § 404.1525(c)(3) and (d); Hale v. Sec'y of Health & Human Servs., 816 F.2d 1078, 1083 (6th Cir. 1984). However, a claimant is also deemed disabled if her impairment is the medical equivalent of a listing. 20 C.F.R. § 404.1520(a)(4)(iii); Turner, 381 F. Appx. at 491. Medical equivalence means "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). "An administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." Reynolds v. Comm'r Soc. Sec., 424 F. App'x 411, 415 (6th Cir. 2011). Additionally, the administrative law judge looks to the opinions of the state agency medical advisors and/or the opinion of a testifying medical expert for guidance on the issue of whether the claimant's impairment is the medical equivalent of a listing. *See* 20 C.F.R. § 404.1526(c) and (d); Social Security Ruling 17-2p, 2017 WL 3928306, at *3-4 (March 27, 2017); Deters v. Sec'y of Health, Educ. & Welfare, 789 F.2d 1181, 1186 (5th Cir. 1986).

Here, Plaintiff's challenge focuses on Listing 1.06 which requires a showing that she suffers from the following:

> *Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones*. With:

> A. Solid union not evident on appropriate medically acceptable imaging and not clinically solid;
>
> and
>
> B. Inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.06. When read together, the first two paragraphs require a fracture of one of the listed bones with a nonunion. *See* Wright v. Astrue, No. 3:10-CV-0636, 2011 WL 3444053, at *3 (M.D. Tenn. Aug. 8, 2011). A nonunion is defined as a "failure of the ends of a fractured bone to unite." *Nonunion*, SLOANE-DORLAND ANN. MED.-LEGAL DICTIONARY, 378 (Supp. 1992). Thus, the first two paragraphs require the nonunion be a consequence of a fracture of the listed bone. *See* Wright, 2011 WL 3444053, at *3. This requirement is satisfied because the medical evidence shows Plaintiff sustained a fracture of her left tibia and, because of that fracture, a solid union of the tibia was not evident in the x-rays. Dr. O'Neil repaired the nonunion of Plaintiff's fractured tibia. The Court will next address paragraph B of the Listing.

Paragraph B directs the reader to the following material for guidance on what the SSA means by "inability to ambulate effectively":

> (1) *Definition*. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (*see* 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .

> (2)  *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(1)-(2).

At step three, the ALJ generally found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16). The ALJ also specifically considered whether Plaintiff met or medically equaled Listings 1.02, 1.06, and 1.07 (Tr. 16-17). After discussing the criteria for each of these listings, the ALJ provided the following assessment:

> As discussed in detail in the following paragraphs, while the claimant certainly has some residual symptoms and limitations related to her extremity fractures, a thorough review of the medical record, including physical examinations, treatment notes, and diagnostic studies, failed to demonstrate extreme walking difficulties or extreme loss of bilateral upper extremity functioning. Further, as discussed above, the claimant's impairments did not interfere significantly with her daily activities, as evidenced by her ability to prepare simple meals, perform household chores, drive, shop, leave the house alone, and spend time with others (l0E/3-5). As such, the undersigned finds that the claimant's impairments fail to meet or medically equal listings 1.02, 1.06, or 1.07.

(Id.). Contrary to Plaintiff's claim, the ALJ adequately explained why Plaintiff did not meet or medically equal Listing 1.06. In connection with the RFC assessment, the ALJ provided an

in-depth explanation of the objective medical evidence in the record and why he found Plaintiff's subjective statements about her inability to walk were not entirely consistent with the medical and other evidence in the record (Tr. 17-20). The ALJ discussed Dr. O'Neil's medical records addressing Plaintiff treatment and recovery in April and May of 2016 (Tr. 18). The ALJ also discussed the June, July, and August of 2016 treatment notes from Drs. O'Neil and Langenberg, indicating Plaintiff made a remarkable recovery and developed the ability to ambulate effectively (Tr. 18, 379, 398, 1100, 1474). Additionally, the ALJ discussed Plaintiff's daily activities which showed an ability to ambulate effectively both in and outside her own home (Id. citing Tr. 16, 17, 257-59, 381, 379). Evidence the ALJ considered, but Plaintiff ignores, demonstrates Plaintiff failed to satisfy the requirement that her "return to effective ambulation did not occur or is not expected to occur within 12 months of onset." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.06(B). In sum, Finding No. 4 is supported by substantial evidence and comports with applicable law.

Finding No. 5

1. Arguments of the Parties

Plaintiff alleges the RFC is incomplete because the ALJ failed to discuss evidence that showed she was significantly more limited than the ALJ's RFC determination (DN 17-1 PageID # 4751; DN 17-2 PageID # 4758-61). In support of her allegation, Plaintiff cites her own hearing testimony; a December 20, 2017 treatment note by Dr. Jeana Lee in Urgent Care that includes a diagnosis of nonunion left tibia with probable osteomyelitis; a December 20, 2017 discharge summary indicating Plaintiff underwent a "Debridement and irrigation, incision and drainage of tibia fracture abscess performed, debridement of muscle and bone per Dr. Weinzapfel"; a January

12

3, 2018 follow-up note by Dr. O'Neil indicating diagnoses of abscess left lower leg, probable osteomyelitis left lower leg, open left tibia fracture post interlocked IM nail fixation, and possible nonunion of left tibial shaft fracture as well as referral to Louisville for further orthopedic evaluation and treatment; a January 8, 2018 radiology report indicating x-rays of Plaintiff's left Tibia and Fibula revealed "[a]nterior soft tissue defect in the mid to distal 3rd of the lakes, extends to the anterior tibial surface just above the level of the tibial fracture . . . [and] 2 areas of subacute fracture in the fibular noted"; a March 7, 2018 discharge summary regarding surgery to address atrophic nonunion of the left tibia fracture; an April 4, 2018 treatment note by Dr. Yelton indicating a diagnostic impression of nonunion fracture of the left tibia and fibula, and Plaintiff was instructed in "use of soft support . . . advised . . . elevation of the limb to help control any edema"; and a June 8, 2018 post-surgical follow-up note by Dr. Yelton indicating Plaintiff walks with a slightly antalgic gait favoring the left, radiographs of the left tibia done that day show stable position of her fracture and hardware, and no increasing callus formation (DN 17-2 PageID # 4758-61 citing Tr. 48-49, 1140, 1148, 1248, 1266, 1495, 1496, 1498, 1506). Plaintiff argues the ALJ's failure to address these critical medical notes is grounds for reversal because the evidence shows she is more limited than light work. In an effort to show the ALJ's error is not harmless, Plaintiff cites testimony from the vocational expert indicating all work would be precluded if Plaintiff has to elevate her legs to heart level for an hour each work day or she is absent from work more than one day per month (Id. citing Tr. 79).

      Defendant points out that Plaintiff reliance on treatment records from December 2017 through June 2018 is misplaced because this evidence concerns Plaintiff's condition after March 31, 2017, her date last insured (DN 20 PageID # 4781-84). Defendant explains the ALJ

13

considered the relevant medical and non-medical evidence, made the RFC determination, and reasonably concluded that Plaintiff was not disabled through March 31, 2017, her date last insured (Id.). Defendant also asserts that Plaintiff has not shown that the evidence she cited provides any insight into her condition during the relevant period January 30, 2016 through March 31, 2017 (Id.). For instance, the December 20, 2017 treatment note cited by Plaintiff addresses treatment received for an infection nine months after the date last insured (Id. citing Tr. 1149). Defendant also points out that Plaintiff's reliance on the leg elevation limitation is misplaced because that recommendation was made in April 2018, more than a year after her date last insured (Id. citing Tr. 1506).

   2. Discussion

The RFC finding is an Administrative Law Judge's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c); Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 728 (6th Cir. 2013) (the Commissioner is ultimately responsible for assessing a claimant's RFC). An Administrative Law Judge makes this finding based on a consideration of medical opinions and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a), 416.946(c). Medical opinions expressing functional limitations imposed by a claimant's physical or mental impairments can be generated by treating physicians or psychologists, consultative examining physicians or psychologists, state agency physicians or psychologists who reviewed the claimant's medical records, or medical experts who testify at

hearings before an Administrative Law Judge. 20 C.F.R. §§ 404.1502, 404.1513(a)(2), 404.1513a(b), 404.1527, 404.1545(a)(3), 416.902, 416.913(a)(2), 416.913a(b), 416.927, 416.945(a)(3). Thus, in making the RFC finding an Administrative Law Judge must necessarily assign weight to the medical source statements in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1527(c), 404.1529(a), 416.927(c), 416.929(a).

The ALJ's RFC determination focused on evidence in the record addressing limitations imposed by Plaintiff's physical impairments during the relevant time frame which began on January 30, 2016, the alleged onset of disability, and ended on March 31, 2017, the date she last met the insured status requirements of the Social Security Act (Tr. 14, 17-20). However, contrary to Plaintiff's accusation, the ALJ considered the above-mentioned evidence addressing her physical impairments after the relevant time frame (*see* Tr. 18-19). Further, the ALJ explained why Plaintiff's statements concerning the intensity, persistence, and limiting effects of her impairments were not entirely consistent with the medical and other evidence in the record, which included Plaintiff's own statements regarding her daily activities (Tr. 17-20). 20 C.F.R. § 404.1529(a). The ALJ also gave good reasons, supported by substantial evidence in the record, for the weight assigned to the medical source statements from the state agency medical consultant Dr. Jack Reed and Kelly Cole, D.O. (Tr. 19-20). 20 C.F.R. § 404.1527(c). In sum, there is no merit to Plaintiff's claim because the ALJ provided a cogent explanation, supported by substantial evidence in the record, for the physical limitations set forth in the RFC assessment set forth in Finding No. 5 (Tr. 17-20).

## CONCLUSION

As the undersigned noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion."  Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004).  Regardless of how the undersigned may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.  42 U.S.C. § 405(g).  Rather, the undersigned is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.  (Id.).  After reviewing the record, the undersigned concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.  Therefore, Plaintiff is not entitled to relief regarding her challenge.

## RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence, and it is recommended that judgment be granted for the Commissioner.

March 4, 2021

H. Brent Brennenstuhl
United States Magistrate Judge

## NOTICE

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed, or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, 474 U.S. 140 (1984).

March 4, 2021

H. Brent Brennenstuhl
United States Magistrate Judge

Copies:      Counsel